UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
UNITED STATES OF AMERICA,

   Plaintiff,

-against-

WARREN NUZZO,

   Defendant.
-----------------------------------------------x

*misfiled in the middle of Gasser m+o*

MEMORANDUM AND ORDER
02 CR 1239 (ILG)

GLASSER, United States District Judge:

In 385 F.3d 109 (2d Cir. 2004), the Court of Appeals has reversed in part and <u>vacated</u> and remanded in part, a sentence imposed upon this defendant in October 2003, of imprisonment for a term of 136 months to be followed by a term of supervised release and a special assessment of $200. In arriving at the sentence, the Court calculated a total offense level of 32 by enhancing the base offense level by 2 points for abuse of trust and an additional 2 points for obstructing justice and crediting him with 2 points for acceptance of responsibility, 2 points for safety valve entitlement and 2 points for mitigating circumstances in accordance with U.S.S.G. § 5K2.0.

The defendant appealed the enhancement of the sentence for abuse of trust and the government cross-appealed contending that I erred in awarding Nuzzo a safety valve deduction, U.S.S.G. § § 2D1.1(b)(6) and 5C1.2(a) and in downwardly departing pursuant to U.S.S.G. § 5K2.0. Although not referenced in the Court's opinion, it is assumed that the defendant's appeal is pursuant to 18 U.S.C. § 3742(b)(1) and/or (2).

In deciding the appeal by the defendant, the determination that the abuse of process was erroneous must have been pursuant to § 3742(f)(1). The sentence was imposed as a result of an incorrect application of the guidelines, in which case "the court

shall remand the case for further sentencing proceedings."

In deciding the cross-appeal by the government that the sentence was "outside the applicable guideline range and the district court failed to provide the required statement of reasons in the order of judgment and commitment, or the departure was based upon an impermissible factor . . . and is plainly unreasonable, it shall state specific reasons for its conclusions and – if it determines that the sentence is too low and the appeal has been filed under subsection (b), <u>it shall set aside the sentence and remand the case for further sentencing proceedings</u> with such instruction as the court considers appropriate, subject to subsection (g)." (emphasis added) § 3742(f)(2)(B) subsection (g) provides that if the case was remanded pursuant to subsection (f)(1) or (f)(2) the district court shall sentence in accordance with § 3553.

The Court of Appeals reversed the enhancement for abuse of a position of trust and <u>vacated</u> the award of a safety valve deduction and downward departure and remanded the case to the this Court to "(1) reevaluate whether Nuzzo is entitled to a safety-valve deduction; (2) reconsider, on notice to the government as appropriate, whether Nuzzo is entitled to a downward departure; and if it finds that such a departure is warranted, (3) state in open court, and in a written order and judgment, its reasoning in a manner that complies with the requirements of the Protect Act."

The significant distinction between remanding a case for further sentencing proceedings and setting aside or vacating and remanding for further sentencing proceedings has been frequently noted. In <u>Werber v. United States</u>, 149 F.3d 172, 178 (2d Cir. 1998), the Court had occasion to observe, citing <u>United States v. Polland</u>, 56 F.3d 776, 778 (7th Cir. 1995), that "The effect of a vacation is to nullify the previously

2

imposed sentence. Therefore the district court will be writing on a clean slate." The Court also cited United States v. Maldonado, 996 F.2d 598 (2d Cir. 1993), to the same effect.

The Court in Werber also observed that in undertaking to resentence a defendant the Court is required to consider him as he stands before the Court at that time, citing United States v. Core, 125 F.3d 74, 77 (2d Cir. 1997). U.S.S.G. § 1B1.11 similarly provided that "the court shall use the Guidelines Manual in effect on the date the defendant is sentenced."

Between the time Nuzzo was sentenced on October 9, 2003, the Court of Appeals decided his appeal on October 1, 2004, and the time his appearance before the Court for resentencing, the Supreme Court decided Booker/FanFan, 543 U.S. 220, 125 S. Ct. 738 on January 12, 2005, declaring the mandatory application of the Sentencing Guidelines unconstitutional and making them effectively advisory. Less than one month after that case was decided, the Court of Appeals for the Second Circuit decided United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). In what the court characterized as the "Remedy Opinion," the opinion by Justice Breyer, 543 U.S.    , 125 s. Ct. at 756, it noted that in that opinion §3553(b)(1), mandating the use of the Guidelines and § 3742(e) which set forth standards of review on appeal were required to be severed and were replaced with "a practical standard of review already familiar to appellate courts: review for 'unreasonableness'" observing that "the 'unreasonableness' standards are not foreign to sentencing law." 397 F.3d at 110. The Court in Booker/FanFan explained that § 3553(a) remained in effect and the factors listed in that section would guide appellate courts in determining whether a sentence is reasonable. The Court in Crosby cautioned that the

3

"excision of the mandatory aspect of the Guidelines does not mean that the Guidelines have been discarded. On the contrary, sentencing judges remain under a duty with respect to the Guidelines – not the previously imposed duty to apply the Guidelines, but the continuing duty to '<u>consider</u>' them, along with the other factors listed in section 3553(a). In order to fulfill this statutory duty to 'consider' the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range. A judge cannot satisfy this duty by a general reference to the entirety of the Guidelines Manual followed by a decision to impose a 'non-Guidelines sentence'. Subsection 3553(a)(4) contemplates consideration of the Guidelines range applicable to the defendant and subsection 3553(a)(5) contemplates consideration of policy statements . . . Once an applicable Guidelines range has been determined, the sentencing judge will have the duty, imposed by subsection 3553(a)(4) to 'consider' it, along with all of the factors listed in section 3553(a)." 397 F.3d at 111-112.

The Court emphasized that the sentencing judge would commit error in violation of § 3553(a) if he failed to "consider" the applicable Guidelines range and the other 3553(a) factors and simply imposed what he deemed an appropriate sentence without the required consideration. The sentencing judge would also err if consideration were not given to the applicable Guidelines range which § 3553(a)(4) required.

Some six months later, the Court decided <u>United States v. Lake</u>, 419 F.3d 111 (2d Cir. 2005), in which it wrote at p. 114 as follows:

> First, the fact that a judge selects a sentence *within* a guideline range that the judge thought he was required to apply does not necessarily mean that the same sentence would have been imposed had the judge understood the Guidelines as a whole to be advisory. The applicable

4

> guideline range provides the frame of reference against which the judge chooses an appropriate sentence. . . . Second, although even before *Booker*, a sentencing judge was obliged to consider all the factors set forth in 18 U.S.C. § 3553(a), the required use of one of those factors – the Guidelines, see id. § 3553(a)(4) -- rendered of "uncertain import" the significance of the other factors. See ***Crosby***, 397 F.3d at 111. Now, without the mandatory duty to apply the Guidelines, consideration of the other section 3553(a) factors "acquires renewed significance," ***Crosby***, 397 F.3d at 111, and might result in a different sentence. Third, absent the strictures of the Guidelines, counsel would have had the opportunity to urge consideration of circumstances that were prohibited as grounds for a departure. See U.S.S.G. § 5K2.0(d).

As has been discussed, the defendant stands before the Court, with a clean slate and to be re-sentenced in accordance with the law currently in effect. The mandatory duty to apply the Guidelines being abrogated and the "required uses" of § 3553(a)(4) rendering the significance of the other factors of "uncertain import" the § 3553(a) factors have thus acquired new significance and might result in a different sentence. A consideration of those factors is thus in order and they are:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant

The defendant was reared primarily by his grandmother because his mother was a severe alcoholic who participated in more than 50 rehab programs and was hospitalized several times during the defendant's formative years because of her chromic alcoholism. PSR par. 35.

In 1996, his mother was the victim of a fire in her home from which she suffered 3rd degree burns over 50% of her body. She was hospitalized for six months and while there, suffered a massive stroke which left her completely bedridden. She subsequently

5

died while Nuzzo was incarcerated. PSR par. 41.

The "characteristics" of the defendant are never conveyed by the cold print of a sentencing transcript. The persona of a defendant standing before a sentencing judge is very rarely, if ever, articulated in imposing sentence, but surely plays a role in the delicate and serious process of determining the appropriate sentence and when capable of articulation is an accepted factor to be considered in that determination. See, e.g., United States v. Lara, 905 F.2d 599 (2d Cir. 1990).

Although the defendant does not have the characteristics of the defendant in Lara, he is short, pudgy, indifferent in appearance and perhaps best described as a vulnerable Casper Milquetoast. A reading of the events which led to his conviction would support the conclusion that he was seduced by wily, cunning women in whose hands he was as clay in the hands of a potter. He had no known prior criminal conviction.

His late teenage years and his twenties were marred by chronic alcohol dependence which caused adverse employment and recurring personal problems. He sought and obtained professional counseling and underwent a psychiatric evaluation at Four Winds Hospital in Katonah, New York where he was hospitalized for one week and thereafter spent three weeks at Arms Acres, a substance abuse treatment center in Carmel, New York.

His substance abuse and the fractured life to which it led is not surprising given the formative years against the backdrop of an absent, chronic alcoholic mother.

The nature of the offense and the circumstances surrounding its commission are adequately described in the presentence report and a realistic appraisal of those

6

circumstances has been stated above.

> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment are considerations which weigh heavily with the court in imposing every sentence, and the sentence to be imposed now reflects a very considered assessment of those factors.
>>
>> (B) to afford adequate deterrence to criminal conduct.

This is surely not the occasion to decry yet again the bloodless, mechanistic sentencing mandated by the Guidelines and to ask by what touchstone was it determined that a sentence of 150 months reflected the seriousness of an offense more effectively than one for 130 months or even 90 months, and was more precisely calibrated to promote respect for the law and provided the punishment that was just. Suffice it to say I have considered those factors, limited as that consideration is by the mandatory minimum of 120 months.

>> (C) to protect the public from further crimes of the defendant;

Precisely what measures a court should take to protect the public from crimes the defendant *might* commit in the future, short of imprisoning him for life, is not entirely clear to this court.

>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In imposing the sentence initially, I directed the Bureau of Prisons to provide the necessary treatment aimed at his substance abuse.

7

In Crosby, the Court acknowledged that "Even if reasonable as to length, a sentence unreasonable for legal error in the method of its selection is cause for concern because, in many cases, it will be impossible to tell whether the judge would have imposed the same sentence had the judge not felt compelled to impose a Guidelines sentence." 397 F.3d at 115. In that regard, I can state with absolute certainty that I would not have imposed the same sentence were I not bound by the Guidelines.[1]

In sum, the sentence that I now impose, the mandatory minimum of 120 months, I believe to be reasonable and in that regard I am comforted by the following portion of the opinion in Crosby:

> Because "reasonableness" is inherently a concept of flexible meaning, generally lacking precise boundaries, we decline to fashion any *per se* rules as to the reasonableness of every sentence within an applicable guideline or the unreasonableness of every sentence outside an applicable guideline. Indeed, such *per se* rules would risk being invalidated as contrary to the Supreme Court's holding in *Booker/Fanfan*, because they would effectively re-institute mandatory adherence to the Guidelines. *See*

---

[1] In granting a safety valve reduction notwithstanding my comments concerning the defendant's veracity, perhaps specific reference to United States v. Schreiber, 191 F.3d 103 (2d Cir. 1999) and to United States v. Jeffers, 329 F.3d 94 (2d Cir. 2003) (with emphasis upon the persuasive view of Judge Raggi in her concurring opinion in Jeffers), would have been appropriate. In any event, Schreiber and Jeffers notwithstanding, the fifth prerequisite of the safety valve provision, U.S.S.G. § 5C1.2(5) was not satisfied. The burden of establishing entitlement to it rests with the defendant and he has not carried it. He has remained mute and not forthcoming even while hearing the government's recitation of the information they have reason to believe he has and has not disclosed. Having granted the safety valve deduction was, for that reason, inappropriate. And explication of the fragile state of his grandmother's health and her almost complete dependence upon him as reflected in par. 43 of the presentence report would have enlightened the 5K2.0 invocation when imposing sentence initially. In a letter to me dated June 27, 2003, his grandmother wrote: "I'm Warren Nuzzo's Grandmother. I always had him to help me – He took me to my doctor, took care of my medication, went food shopping, did laundry with me – I really need him!! Please help me!!

8

*Booker/Fanfan*, 543 U.S. at ---, 125 S.Ct. at 794 (Scalia, J., dissenting in part).

In all other respects, the term of supervised release and the special assessment are reimposed and substance abuse treatment is to be provided the defendant by the Bureau of Prisons.

SO ORDERED.

Dated:   Brooklyn, New York
         February 13, 2006

_____
I. Leo Glasser